UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICKEL McNEIL,

        Plaintiff,

v.

OFFICER GRIFFIN,

        Defendant.

CAUSE NO. 3:19-CV-482-DRL-MGG

OPINION AND ORDER

Mickel McNeil, a prisoner without a lawyer, filed this action under 42 U.S.C. § 1983. He was granted leave to proceed on an Eighth Amendment claim against Eric Griffin, a parole officer for the Gary District Parole Officer, for deliberate indifference to his safety. Specifically, he alleged that Officer Griffin refused to let him leave his assigned parole district after he expressed concerns for his safety, resulting in him being attacked by third parties. Officer Griffin now moves for summary judgment.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (citation omitted). In deciding whether a genuine dispute of fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence" in favor of that party.

*Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). At the summary judgment stage, the court cannot "weigh conflicting evidence" or "make credibility determinations," as both of these functions "are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (citations omitted). Instead, the court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citation omitted).

Mr. McNeil received notification of Officer Griffin's motion and was granted two extensions, affording him a total of nearly five months to respond. Most recently, the court granted him until April 9, 2021 to file a response and cautioned him that further extensions of the deadline would not be granted. That deadline has passed and no response has been filed. Pursuant to Local Rule 7-1, the court may rule summarily if a party fails to timely respond to a motion. N.D. IND. L.R. 7-1(d)(5). Nevertheless, "[s]trict enforcement of [local rules] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted." *Id.* The court still must "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.*; *see also Marcure v. Lynn*, ---F.3d---, 2021 WL 1138110, 4 (7th Cir. Mar. 25, 2021) ("Rule 56 imposes an affirmative obligation on a movant that we cannot ignore merely because a nonmovant provides no responsive arguments.").

The undisputed facts show that on September 8, 2018, Mr. McNeil was released on parole and was assigned to the Gary parole district. He signed a parole release agreement

2

acknowledging that any travel outside his parole district required the express written permission of his parole officer, Officer Griffin. (ECF 58-1.) A short time after his release, Mr. McNeil asked Officer Griffin if he could serve his parole term in Texas because he did not feel safe in Gary. (ECF 58-3 at 13.) Mr. McNeil claimed that he was being threatened by people in the neighborhood because he had served as a witness for the prosecution in a criminal case against another individual years earlier. (ECF 58-3 at 15.) He "couldn't be sure" the individuals associated with that case would not harm him in Texas, but he felt it was a "safer option." (*Id.*) Officer Griffin told Mr. McNeil that a transfer was possible but that it would "take some time" to process such a request. (*Id.* at 19.) Officer Griffin asked Mr. McNeil for a valid address in Texas where he would reside, and also told him that a fee and other information was required. (*Id.*)

A few days later, Mr. McNeil flew to Texas without Officer Griffin's permission and remained there for several days. (*Id.* at 21.) At Officer Griffin's direction, Mr. McNeil returned to Indiana. (*Id.* at 22.) However, a short time later, Mr. McNeil once again left his parole district without permission, this time travelling to Lafayette, Indiana. (*Id.* at 23.) While in Lafayette, Mr. McNeil was attacked by third parties. (*Id.* at 24.) He was taken to the hospital for treatment, and following his release, was charged with and pleaded guilty to violating the terms of his parole.[1] (ECF 58-2.) Thereafter, his parole was revoked and he returned to prison. (*Id.*)

---

[1] The record reflects that during the roughly 45 days Mr. McNeil was on parole, he missed a scheduled meeting with his parole officer, tested positive for drug use, and twice left his assigned parole district without permission. (ECF 58-3.) He admitted to the violation of leaving his assigned parole district without permission. (*Id.*)

He sues Officer Griffin under the Eighth Amendment, arguing that Officer Griffin is responsible for his injuries because he failed to protect him from the third parties who attacked him. Officer Griffin argues that he is entitled to summary judgment because these facts do not give rise to a constitutional duty to protect Mr. McNeil from harm. In *Deshaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989), the United States Supreme Court held that a state actor had no constitutional duty to protect a child from injury by a third party—his father—after receiving reports of possible abuse. The court reasoned as follows:

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. . . . [I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty . . . . [T]he harms Joshua suffered occurred not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor. While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id.* at 200-01 (internal citations and footnote omitted). In other words, a constitutional duty to protect arises only when the state has so restricted an individual's movement or access to basic human needs that he cannot provide for himself. Under such circumstances, the state must "assume some responsibility for his safety and general well-being." *Id.* at 200. Conversely, no duty arises when a person is not in state custody

4

and "[t]he most that can be said . . . is that [state actors] stood by and did nothing when suspicious circumstances dictated a more active role for them." *Id.* at 203.

That is the case here. As in *Deshaney*, Mr. McNeil was not incarcerated, institutionalized, or otherwise in physical custody at the time of his injury. Rather, he was out on parole living in the community. There is nothing in the record to suggest that Officer Griffin played a part in creating the threat to Mr. McNeil's safety, or that he stood in the way of Mr. McNeil taking other reasonable steps to protect himself, such as relocating within his parole district or going to the police.[2] Nor was it Officer Griffin who attacked him, but rather third parties. Indeed, it would be difficult to conclude that Officer's Griffin's actions were even the "but for" causation of Mr. McNeil's injuries, because Mr. McNeil left his parole district without Officer Griffin's permission and was still attacked. Mr. McNeil explained at his deposition that the individuals involved with the criminal case were able to find him because his daughter "got on the internet and announced that [he] was in Lafayette." (ECF 58-3 at 17.) There is nothing in the record to suggest that Officer Griffin was involved in any way in the events occurring in Lafayette.

While this circuit has found that parole officers can be held liable for deliberate indifference in certain situations, such liability is quite narrow. For instance, in *Hankins v. Lowe*, 786 F.3d 603 (7th Cir 2015), this circuit found that a parolee stated an Eighth Amendment claim against her parole officer after the officer subjected her to restrictive

---

[2] Mr. McNeil suggested at his deposition that his parole agreement did not permit him to contact the police, but the agreement contains no such provision. (*See* ECF 58-1.) It would certainly be unusual if the Indiana parole board required parolees to give up general police protection available to all citizens, and there is no indication that's what occurred here.

conditions past the expiration of her parole term. The circuit reasoned that "a state officer who unlawfully keeps a person in custody beyond the date at which he (in this case she) is entitled to be released imposes a form of cruel and unusual punishment, and thus violates the Eighth Amendment."[3] *Id.* at 605. Additionally, in *Mitchell v. Kallas*, 895 F.3d 492 (7th Cir. 2018), the circuit relied on *Hankins* to conclude that a parolee stated an Eighth Amendment claim against parole officers who barred her from obtaining needed medical treatment after she had arranged for such treatment on her own. "Though parole officers may have no duty . . . to provide a parolee with medical care or ensure that she receives it, they at least may be constitutionally obligated not to block a parolee who is trying to arrange such care for herself without any basis in the conditions of parole." *Id.* at 495.

Neither of these cases is analogous to Mr. McNeil's case. Mr. McNeil was not held past his parole release date or prevented from obtaining needed medical care. Rather, the undisputed facts show that he was validly on parole at the time of these events, and that he had agreed not to travel outside his assigned parole district without Officer Griffin's express permission. Officer Griffin appeared to be looking into whether a transfer to Texas could be accomplished pursuant to Mr. McNeil's request, but Mr. McNeil left before the process could be completed. Officer Griffin did not cause the threat to Mr. McNeil's safety, nor did he stop Mr. McNeil from taking reasonable steps to protect himself short of leaving his assigned parole district. Ultimately, Mr. McNeil was injured

---

[3] In a subsequent appeal, this circuit concluded that the plaintiff's case was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and did not reach the merits of her Eighth Amendment claim. *See Hankins v. Lowe*, 770 F. App'x 756, 757 (7th Cir. 2019).

by third parties even though he left his parole district. There is no Eighth Amendment liability under these circumstances.

Officer Griffin alternatively argues that he is entitled to qualified immunity. "Under the doctrine of qualified immunity, government officials are liable for civil damages . . . only when their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Balsewicz v. Pawlyk*, 963 F.3d 650, 656 (7th Cir. 2020) (citations and internal quotation marks omitted). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (citation omitted). In evaluating a qualified immunity defense at summary judgment, the court considers (1) whether the facts, taken in the light most favorable to the plaintiff, show that the official violated a clearly established right; and (2) whether the plaintiff has come forward with sufficient evidence to create a genuine dispute of fact as to whether the official in fact committed those acts. *Balsewicz*, 963 F.3d at 656.

"A right is clearly established when existing precedent has placed the statutory or constitutional question beyond debate." *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (citation and internal quotation marks omitted). The "focus is on whether the [defendant] had fair notice that his conduct was unlawful." *Balsewicz*, 963 F.3d at 656-57 (citation, internal quotations marks, and alteration omitted). "Put another way, if applying the law at that time to the facts would have left objectively reasonable officials in a state of uncertainty, then immunity is appropriate." *Id.* (citation and internal quotation marks

omitted). Thus, "clearly established law cannot be framed at a high level of generality." *Campbell*, 936 F.3d at 545 (citation and internal quotation marks omitted).

As outlined above, there is no clearly established law that would have put Officer Griffin on notice that he was violating Mr. McNeil's Eighth Amendment rights by not allowing him to immediately leave his parole district after he expressed concerns for his safety. As Officer Griffin points out, such a rule would have far-reaching negative implications for the parole system and the ability of parole officers to monitor their parolees. Although the law has recognized Eighth Amendment liability of parole officers under limited circumstances, it isn't under circumstances analogous to this case. *See Mitchell*, 895 F.3d at 495; *Hankins*, 786 F.3d at 605. Therefore, Officer Griffin is entitled to qualified immunity.

For these reasons, the defendant's motion for summary judgment (ECF 57) is GRANTED. The clerk is DIRECTED to enter judgment in favor of Officer Griffin and to close this case.

SO ORDERED.

April 23, 2021                                         *s/ Damon R. Leichty*
                                                                                                                Judge, United States District Court